■ In the Matter of BEHAVIOR RESEARCH INSTITUTE, INC., et al., Respondents, v GORDON M. AMBACH, as New York State Commissioner of Education, et al., Appellants. (And Another Related Proceeding.)—Yesawich, Jr., J. Appeals from two judgments of the Supreme Court (Brown, J.), entered October 1, 1987 in Albany County, which, in proceedings pursuant to CPLR article 78, granted petitioners' motions for counsel fees.

The fee awards at issue arose out of CPLR article 78 proceedings brought in Supreme Court, Albany County, on behalf of two severely handicapped children by their parents who sought to place the children at Behavior Research Institute, Inc. (hereinafter BRI), an out-of-State facility for the severely handicapped.[1] In separate decisions, Supreme Court found that both children were inappropriately placed, the only appropriate facility was BRI and, although petitioners had not exhausted their administrative remedies, to do so would be futile given respondent Commissioner of Education's refusal to implement the recommendation of each child's Committee on the Handicapped,[2] both of which called for placement with BRI. Supreme Court refused to require "the futile act of appealing the determination of the State respondents to said respondents". Following the failure of respondents to perfect an appeal from those judgments, petitioners moved for orders granting counsel fees pursuant to the Handicapped Children's Protection Act (hereinafter HCPA) (see, 20 USC § 1415 [e] [4] [B]-[G]). Both children's parents were represented by the same law firm and lead attorney. Supreme Court granted the mo-

---

1. BRI also joined in one of the proceedings, seeking to enjoin respondents from terminating its contract with the State for the care and education of Denice S.

2. After July 1, 1986, such a committee is designated as a Committee on Special Education (see, L 1986, ch 273).

tions, awarding counsel fees and costs and disbursements in the amounts of $34,170 in the case of Denice S. and $43,803.25 in the case of Joseph P.[3] Respondents appeal, arguing that under HCPA counsel fees are not available unless the procedures specified in the Education of the Handicapped Act (hereinafter EHA) (20 USC § 1400 *et seq.)* are followed and that, in any event, the amount of the fees were improperly determined.

Although the question of whether petitioners were required to exhaust their administrative remedies has already been finally resolved, given respondents' election not to appeal the earlier judgments, respondents nevertheless contend that petitioners' decision to forego the procedures set forth in EHA, including an impartial review conducted by the State educational agency (20 USC § 1415 [c]), precludes an award of counsel fees under HCPA, which is limited to actions or proceedings brought under EHA *(see,* 20 USC § 1415 [e] [4] [B]). Apropos of this argument, it suffices to note that the United States Supreme Court has categorically declared that parents seeking judicial review under EHA "may by-pass the administrative process where exhaustion would be futile or inadequate" *(Honig v Doe,* 484 US 305, —, 108 S Ct 592, 606). Clearly then, judicial intervention resorted to prior to the exhaustion of administrative review provided for in EHA can equate to judicial review within the meaning of EHA despite 20 USC § 1415 (e) (2), and counsel fees may be awarded to the successful parent in such event.

The second issue presented by this appeal relates to the appropriateness of the amount of the fee awards, which were made to Albany attorneys on a descending scale beginning with $120 per hour for the most experienced attorney. As with calculating counsel fees in other matters, the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate *(see, Hensley v Eckerhart,* 461 US 424, 433). Under HCPA, however, bonuses and enhancements are prohibited (20 USC § 1415 [e] [4] [C]).

Respondents maintain that petitioners' attorneys have submitted insufficient evidence from which to determine the number of hours reasonably expended in these matters. In addressing this issue, a helpful paradigm is the policy adopted in 1983 by the Second Circuit of the United States Court of Appeals mandating that counsel fee applications be docu-

3. Respondents aver that the same counsel also received $23,657.50 in counsel fees from BRI.

mented with contemporaneous time records *(New York Assn. for Retarded Children v Carey,* 711 F2d 1136, 1147-1148). Here, petitioners' attorneys submitted a fee narrative compiled from daily time sheets, citing confidentiality concerns as the reason for not placing the time sheets in the record. Given the coexistence of these two related proceedings, respondents, not unreasonably, express bona fide concern for the possibility that counsel might be twice paid for the same research *(cf., Krear & Co. v Nineteen Named Trustees,* 810 F2d 1250, 1266). Considering the striking similarity of the two matters, their common issues, that insofar as BRI's presence added novel issues counsel will be compensated to that extent by BRI, and the further fact of the number of hours billed (some 86 of which pertain to the counsel fee application alone), heightened scrutiny is called for, such that the fee narrative that has been provided furnishes an insufficient basis upon which to predicate this fee award. On remittal, petitioners' attorneys should either submit their time sheets for in camera review or copies thereof with the confidential material redacted.

Respondents' final contention is that the fee award is not based upon rates prevailing in the community as required by 20 USC § 1415 (e) (4) (C). As he was entitled to, an experienced Supreme Court Justice made his determination herein of the appropriate hourly rate relying in part on his own knowledge of the local hourly rates *(see, Miele v New York State Teamsters Conf. Pension & Retirement Fund,* 831 F2d 407, 409). We do not find that determination unsupported by the record, in spite of a 1985 HCPA award in Albany of counsel fees at the rate of $90 per hour *(Matter of Esther C. v Ambach,* 142 AD2d 94), for petitioner submitted evidence of prevailing fees for attorneys' services in the Albany area in 1986, the time frame applicable to the instant proceedings, and they ranged from $90 to $165 an hour.

Judgments reversed, on the law, without costs, and matters remitted to the Supreme Court for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Kane, Casey, Yesawich, Jr., and Mercure, JJ., concur.