■ In the Matter of MARTIN PIDEL, Appellant, v CITY OF YONKERS, Respondent. [617 NYS2d 844] —In a proceeding pursu-

ant to CPLR article 78 to review a determination by the respondent dated December 17, 1991, which denied the petitioner benefits under General Municipal Law § 207-a (2), the appeal is from a judgment of the Supreme Court, Westchester County (Cowhey, J.), entered January 8, 1993, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law, with costs, the petition is granted to the extent that the determination of the respondent is annulled, and the matter is remitted to the respondent for a determination of the amount of benefits owed to the petitioner pursuant to General Municipal Law § 207-a (2) in accordance herewith.

The petitioner began working for the Yonkers Fire Department as a firefighter in 1964. On February 7, 1988, he sustained an injury to his knee during the performance of his duties as Assistant Chief. The petitioner's medical expenses connected with his knee problem were paid by the respondent City of Yonkers (hereinafter the City), and he did not return to active duty after the injury. On March 21, 1988, the petitioner voluntarily retired pursuant to Retirement and Social Security Law § 384-d (optional 20-year service retirement). On or about March 13, 1990, the petitioner filed two applications with the Police and Fire Retirement System: (1) an application for an accidental-disability retirement pursuant to Retirement and Social Security Law § 363, and (2) an application for a performance-of-duty disability retirement pursuant to Retirement and Social Security Law § 363-c. By notice dated October 15, 1990, the Police and Fire Retirement System, on behalf of the New York State Comptroller, notified the petitioner that it had determined he was "incapacitated for the performance of duty as the natural and proximate result of an accident sustained in service", and that the petitioner was "permanently incapacitated for the performance of duties". Thus, the State Comptroller granted the petitioner an accidental-disability retirement pursuant to Retirement and Social Security Law § 363 and a performance-of-duty disability retirement pursuant to Retirement and Social Security Law § 363-c, and converted his Retirement and Social Security Law § 384-d ordinary service retirement accordingly.

On or about December 10, 1990, the petitioner lodged a claim with the City for a wage supplement in addition to his Retirement and Social Security Law §§ 363 and 363-c pension from the Police and Fire Retirement System, pursuant to General Municipal Law § 207-a (2), which provides for the

payment of full wages reduced by the Retirement and Social Security Law §§ 363 and 363-c pension, to a firefighter who is permanently disabled as a result of an injury or sickness incurred or resulting from the performance of the firefighter's duties, provided that the firefighter is granted a retirement under either Retirement and Social Security Law §§ 363 or 363-c, or a similar accidental-disability pension provided by the fund of which the firefighter is a member. On December 17, 1991, the Yonkers City Manager informed the petitioner's attorney that no hearing was warranted, and that the petitioner's request for the wage supplement was denied based upon the ground that the petitioner neither applied for, nor was granted, an accidental-disability pension until two years after he voluntarily accepted a service retirement.

Contrary to the City's contention, the petitioner's qualification for General Municipal Law § 207-a (2) wage supplement benefits has already been effectively determined in the petitioner's favor by the New York State Comptroller, who is vested with the exclusive authority to determine Police and Fire Retirement System retirement applications (see, Retirement and Social Security Law § 374 [b]; *Matter of Crocker v Village of Endicott*, 184 AD2d 820, 822-823). The Comptroller's determination, upon the petitioner's timely application made within two years from the date of his injury (see, Retirement and Social Security Law § 363 [a] [2]; § 363-c [b] [2]), that the petitioner was "permanently incapacitated for the performance of duties * * * as the natural and proximate result of an accident sustained in service", necessarily decided the issue of whether the petitioner was "permanently disabled as a result of an injury * * * incurred or resulting from the performance of his duties" (General Municipal Law § 207-a [2]; *see also, Matter of Crocker v Village of Endicott*, 184 AD2d 820, 822-823, *supra*). Further, the petitioner never returned to active duty after he sustained his line-of-duty injury, and he was granted an accidental-disability retirement pursuant to Retirement and Social Security Law § 363 and a performance-of-duty disability retirement pursuant to Retirement and Social Security Law § 363-c. Thus, "as the later award of such benefits shows [the petitioner was] eligible for such benefits" when he retired *(Matter of Klonowski v Department of Fire*, 58 NY2d 398, 406). Furthermore, "the salary differential is due a disabled fireman receiving an accidental disability allowance or pension even though he voluntarily retired" *(Matter of Klonowski v Department of Fire*, 58 NY2d 398, 406, *supra)*. Therefore, the petitioner was entitled to General Municipal

Law § 207-a (2) benefits and the City's contrary determination was arbitrary and capricious *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222).

In light of the foregoing, we do not reach the petitioner's remaining contentions. Pizzuto, J. P., Santucci, Hart and Goldstein, JJ., concur.